## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| SHERRY EATON, on behalf of J.M.E. a minor child, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-08-16-W |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

Sherry Eaton ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments on behalf of her minor child, J. M.E., under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings in September, 2005, by filing a claim seeking supplemental security income payments on behalf of J.M.E., alleging that J.M.E. had been disabled since September 1, 2005, due to attention deficit hyperactivity disorder [Tr. 39 and 48 - 51]. Plaintiff's claim was denied; she subsequently sought and received a de novo

hearing before an administrative law judge ("ALJ") [Tr. 33, 34 - 37, and 39 - 42].   A May, 2007 hearing was held where Plaintiff, who appeared with a  Professional Social Security Disability Representative, testified [Tr. 175 and 178 - 190].  In his August, 2007 hearing decision, the ALJ found that J.M.E.'s impairments did not meet or equal a listed impairment – medically or functionally –  and, consequently, determined that J.M.E. was not disabled within the meaning of the Social Security Act [Tr. 12 - 23].   The Appeals Council of the Social  Security  Administration  declined  Plaintiff's  request  for  review,  and  Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 4 - 7].

**Standard of Review**

This  court  is  limited  in  its  review  of  the  Commissioner's  final  decision  to  a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted).  Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial.  "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion."  *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted).  "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.* at 299.

**Determination of Disability**

2

The Social Security Act provides that "[a]n individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(c)(I). The Commissioner applies a three-step sequential inquiry to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a). At the first step, it is determined whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, the inquiry continues to the second step for consideration of whether the child has a severe medically determinable impairment(s). 20 C.F.R. § 416.924(c). If so, the question at the third step is whether such impairment(s) meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(d). A finding that a child is not disabled is made if the impairment(s) does not meet the twelve-month duration requirement or if the impairment does not meet, medically equal, or functionally equal the listings. 20 C.F.R. § 416.924(d)(2).

Here, the ALJ found at step one that J.M.E. had not engaged in substantial gainful activity and, at step two, determined that he suffered from severe, medically determinable impairments – attention deficit hyperactivity disorder and an anxiety related disorder [Tr. 15]. He further concluded that J.M.E.'s condition does not meet or medically equal the criteria for any impairment listed in 20 C. F. R. Part 404, Subpart P, Appendix 1. *Id.* Finally, after evaluating the credibility of J.M.E.'s claimed functional limitations and restrictions of

3

activities, the ALJ determined that, while severe, J.M.E.'s impairments did not functionally equal any listing [Tr. 15 - 23].

**Plaintiff's Claim of Error**

Plaintiff's sole claim of error is that the ALJ's evaluation of the opinions of J.M.E.'s "educational personnel" regarding his functioning was legally deficient [Doc. No. 11, p. 3]; Plaintiff's sole  argument in support of this claim of legal error is that the ALJ's analysis did not satisfy the requirements of Social Security Ruling 06-03p.  *Id.*

**Analysis**

**The ALJ's Decision**

Before summarizing the evidence of record, the ALJ set out the standards to be applied in determining functional equivalence, including the requirement that the adjudicator assess a child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being [Tr. 13]. The ALJ noted that

> In making this assessment, the undersigned must compare how appropriately, effectively and independently the [child] performs activities compared to the performance of other children of the same age who do not have impairments. To functionally equal the listings, the [child's] impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain (20 CFR 416.926a(d)).

> In assessing whether the [child] has "marked" or "extreme" limitations, the undersigned must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe (20

4

CFR 416.926a(a)). The undersigned must consider the interactive and cumulative effects of the [child's] impairment or multiple impairments in any affected domain (20 CFR 416.926a(c)).

*Id.*

The ALJ's decision reveals that the child in this case, J.M.E., was born on November 23, 1999, and was a preschooler on the date the application for benefits was filed and a school-age child as of the date of the decision [Tr. 15]. In August 2005, Plaintiff, the child's mother, advised Dr. Vic Fey, treating physician, that the child's teacher suggested the possibility that the child was suffering from attention deficit disorder [Tr. 16 and 141]. As the ALJ notes, Dr. Fey referred the child to a pediatric psychiatrist but the medical records do not indicate whether an evaluation occurred. *Id.* Nonetheless, in October, 2005, J.M.E.'s mother reported that the child had been diagnosed with attention deficit disorder and that "they" wanted him started on medication; Dr. Fey started J.M.E. on Ritalin [Tr. 16 and 138]. Dr. Fey's follow-up notes reflect that the child's disorder remained under good control with medication [Tr. 16, 136, and 137].

In January 2006, Dr. Fey noted that J.M.E.'s mother and teacher had observed that while the child had good control with Ritalin, the medication was wearing off by the afternoon; Dr. Fey changed J.M.E.'s medication to Metadate [Tr. 135]. The reports of good control with the current dose of medication then continued from the child's next reported visit in August, 2006 through February, 2007 [Tr. 16, 133, 134, 160, 161, 162, 172, and 173]. Once again, in April, 2007, J.M.E.'s mother reported that the child's teacher was concerned

about the medication wearing off by the latter part of the afternoon; Dr. Fey increased the child's dosage of Metadate [Tr. 16 and 174].

As to other evidence of record, the ALJ stated that in October, 2005, Andra Epperly, a therapist with a M.Ed., evaluated J.M.E. and concluded that he suffered from several disorders [Tr. 16 and 114 - 126].   The ALJ gave greater weight to the opinions of the physicians in the case because of their medical training and expertise [Tr. 16]. The ALJ also discussed the October, 2005 statement by J.M.E's kindergarten teacher who reported the child's difficulties in acquiring and using information and in attending and completing tasks [Tr. 16 and 60 - 67].  The ALJ noted that the teacher had only been teaching J.M.E. for two months and that his performance level testing had not been completed [Tr. 16].  Moreover, J.M.E. had not been placed on medication therapy at the time of this teacher's report [Tr. 16 - 17 and 138].

In addition, the ALJ addressed the February 2007 statement by Frances Malson, J.M.E.'s first grade classroom teacher, that when the child "takes his medication he 'definitely' settles down and is able to function more appropriately." [Tr. 17 and 77 - 84, at 83].  Also the ALJ noted that in February 2007, Jalonda Bengs, a special education teacher, reported that J.M.E. was "functioning 'slightly' below grade level but was able to perform math activities independently once learned." [Tr. 17 and 93 - 100, at 94].  Ms. Bengs also stated that while the child picked up on new concepts fairly quickly, he tended to occasionally rush through his work.  *Id.*  In addition, the ALJ acknowledged Ms. Bengs' notation that J.M.E. was easily distracted and exhibited some slight problems attending and

6

completing tasks and in interacting and relating with others [Tr. 17, 95 and 96]. She reported that the child's medication helped him care for himself and that the medication was "very effective." [Tr. 17 and 98 - 99].

The ALJ concluded that J.M.E. has mental disorders which affect functioning; he further concluded that the child has difficulties in acquiring/using information, attending to and completing tasks, and in interacting and relating with others [Tr. 17]. He does, however, pick up concepts fairly quickly and is both a hard worker and very creative. *Id.* The child's first grade progress report shows that he is performing in a satisfactory manner in most areas [Tr. 17 and 68], and his mother testified at the hearing that he was being promoted on to second grade [Tr. 17 and 181]. As a consequence, the ALJ found the claim that J.M.E. was functionally disabled by his impairments to be not "entirely credible." [Tr. 17]. The ALJ then proceeded to address the six domains of function, making determinations about the impact of J.M.E.'s impairments in each domain[1] and ultimately finding that J.M.E. "does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning." [Tr. 17 - 23, at 23].

**Issue on Appeal**

The focus of Plaintiff's appeal from the ALJ's decision is that he "committed legal error by failing to discuss and explain the weight given to many of the professional opinions

---

[1]The ALJ made additional references to the evidence – including the reports by J.M.E.'s teachers – in making specific findings as to each domain [Tr. 17 - 23].

in the record." [Doc. No. 13, p. 2].   In this regard, the ALJ provided the following explanation of his opinion evidence findings:

> As for the opinion evidence, the record is absent any treating or examining source medical opinion.   When the State agency evaluated the [child's] impairments they found the [child] had less than marked ability to acquire and use information; less than marked ability to attend to and complete tasks; less than marked limitations in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in caring for self; and no limitation in health and physical well-being.   Medical records from Dr. Fey show that the [child's] attention deficit hyperactivity disorder is well controlled with medication.   Teacher statements also show that medication is very effective and that the [child] is able to "sit down and do his work when he is on his medicine."   The record also shows that the [child] has no trouble with absenteeism and is generally performing satisfactorily in coursework.   In comparing the totality of the record, the undersigned finds the State agency opinion consistent with the record and accords it great weight.

[Tr. 17 (record references omitted)].

Plaintiff's brief begins with a discussion of the diagnostic evaluation of J.M.E. conducted by Andra Epperly, a therapist with a M.Ed., on October 4, 2005 [Doc. No. 11, p. 3; Tr. 114].   Apart from this reference, however, Plaintiff's briefing makes no claim that the ALJ erred in his treatment of Ms. Epperly's report.   Moreover, Plaintiff advances no argument that the ALJ committed legal error in his assessment of the records of Dr. Fey, J.M.E.'s treating physician.   Instead, Plaintiff argues that "the opinions of the [child's] teachers should be entitled to more weight than the opinions of the agency staff physicians." [Doc. No. 11, p. 9].

With regard to the opinions of State agency physicians, Social Security regulations provide that

Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists[2] who are also experts in Social Security disability evaluation. Therefore, administrative law judges *must* consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence . . . .

When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions.

20 C.F.R. §416.927(f)(2)(i) and (f)(2)(ii) (emphasis added).

The ALJ's evaluation of Dr. Varghese's opinion evidence was consistent with this regulatory mandate. Focusing, as required,[3] on the effects of J.M.E.'s impairments – attention deficit hyperactivity disorder and an anxiety related disorder – on the six domains, the ALJ considered the evidence from Dr. Fey's notes that the child's attention deficit hyperactivity disorder was well-controlled with medication. He also considered evidence from J.M.E.'s teachers that the medication was very effective and that the child was able to sit and do his work when he was medicated.[4] Moreover, the ALJ specifically considered

---

[2]The record reflects that the State agency physician in this case – Sally Varghese – has a speciality in Child and Adolescent Psychiatry [Tr. 159].

[3]*See* 20 C.F.R. §416.926a(c).

[4]The ALJ's decision reflects that the child's medication levels required adjustment and that teacher concerns in this regard were dealt with by Dr. Fey [Tr. 16].

other record evidence that about the child's school attendance and performance.   He concluded – based upon a comparison of Dr. Varghese's findings to "the totality of the record" [Tr. 17] – that her opinion was consistent with the record.   After weighing these factors, the ALJ accorded the opinion "great weight."   *Id.*

Plaintiff contends in her opening brief that the Tenth Circuit has determined that an opinion of a State agency physician "cannot serve as substantial evidence to support a determination." [Doc. No. 11, p. 8].   In support, Plaintiff cites the decision in *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001).   The Commissioner responded by arguing – correctly – that the *Drapeau* court determined that where the ALJ disregarded the opinion of a treating physician, the unsupported opinions of a non-examining physician were not substantial evidence in support of the decision. *Id*. at 1213-14. [Doc. No. 12, pp. 6 - 7].   Here, however, there is no treating physician opinion evidence and Dr. Varghese's opinions are not unsupported [Tr. 127 - 132].

Plaintiff does not attempt to defend this argument in her reply brief [Doc. No. 13]. Instead, she argues that "the fact that the agency consultant's opinion was the opinion of a doctor is an insufficient reason to accept it over the opinions of the other professionals." [Doc. No. 13, p. 2].   This argument is in keeping with her overarching claim that "the opinions of [the child's] teachers should be entitled to more weight than the opinions of the agency staff physicians[,]" [Doc. No. 11, p. 9], as well as her reliance upon Social Security Ruling 06-03p.

Social Security Ruling 06-03p, 2006 WL 2329939 (SSR-06-03p) acknowledges that evidence from sources other than medical sources can be used to show the severity of an impairment and how an impairment impacts a claimant's ability to function. *Id.* at *2. These sources can include "[e]ducational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers[.]" *Id.* Nonetheless, the regulations do not provide explicit guidance on how the evidence from these other sources is to be evaluated. *Id.* at *4. When, however, an ALJ is evaluating an acceptable medical source opinion such as the opinion of Dr. Varghese in this case, the regulations do require consideration of that evidence. *Id.* And, while "each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all of the evidence in that particular case[,] [f]or opinions from sources such as teachers . . . it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." *Id.* at 5.

The Ruling further acknowledges that under certain circumstances an opinion from a non-medical source such as J.M.E.'s teacher could be found to outweigh an opinion from a medical source such as Dr. Varghese. *Id.* at 6. According to the Ruling, "this could occur if the 'non-medical source' has seen the individual more often and has greater knowledge of the individual's functioning over time *and* if the 'non-medical source's' opinion has better

supporting evidence and is more consistent with the evidence as a whole." *Id.* (emphasis added). Accordingly, while an adjudicator *could* give greater weight to the opinion of a teacher than to an opinion of a medical source, the factors discussed in the Ruling clearly do not "indicate," as Plaintiff argues, "that the opinions of [the child's] teachers *should* be entitled to more weight than the opinions of the agency staff physicians." [Doc. No. 11, p. 9 (emphasis added)].

In addition, and in connection with Plaintiff's assertion that it was "legal error for the ALJ to fail to explain what weight is attached to evidence considering the factors set forth in the rules and regulations[,]" *id.* at 12,  the Ruling specifically addresses the explanation required to be made by the ALJ with regard to the opinions of other sources such as J.M.E.'s teachers:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," *or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case. . . .*"

SSR-06-03p at *6 (emphasis added). Thus, there is no requirement under SSR-06-03p that the ALJ explain "the weight" given the teacher's opinions as long as he provides a discussion of the teachers' evidence that clearly discloses his reasoning. *Id.*

As to Plaintiff's claim that the ALJ erred "because he ignored aspects of the teacher's opinions that contradicted his findings[,]" [Doc. No. 13, p. 4], such claim is premised on the theory that "the limitations described in the teachers' reports demonstrate that J.E. was more limited than the ALJ found." [Doc. No. 11, p. 9]. Plaintiff's argument in this regard is legally flawed. The Social Security Commissioner's Program Operations Manual System ("POMS") instructs that the ratings on the teacher questionnaire, Form SSA-5665-BK, [Tr. 60 - 67, 77 - 84, 85 - 92, and 93 - 100] do not translate directly into the ratings used on the Childhood Disability Evaluation Form, SSA-538 [T. 127 - 132]. *See* POMS DI 25205.030(5). Contrary to Plaintiff's claim, *see* Doc. No. 11, p. 9, n.1, there is no formula for converting the teacher questionnaire ratings into domain ratings.

Specifically, the POMS notes that a teacher questionnaire "reflects a teacher's observations about the severity of problems with individual activities, while the SSA-538 reflects ratings for the severity of limitations in broad domains, not for each particular activity." POMS DI 25205.030(5)(a). Likewise, the ALJ's determination focuses on broad domains instead of individual activities. Consequently, every observation by a teacher of any serious or very serious problem with an individual activity does not, as Plaintiff suggests, [Doc. No. 13, p. 3], automatically become "significantly probative evidence,"[5] *Clifton v.*

---

[5]Here, for example, Plaintiff argues that "the ALJ concluded that J.E.'s ability [sic] acquire and use information was less than marked without discussing and explained [sic] what weight, if any, was given to the opinions of J.E.'s teachers that despite taking medication, J.E. had serious [marked] problems with reading and comprehending written material and with expressing ideas in written form." [Doc. No. 13, p. 3]. First, Plaintiff incorrectly equates the terms "serious" and "marked." *See* POMS DI 25205.030(5). Second,

*Chater,* 79 F.3d 1007, 1009-10 (10th Cir. 1996), which the ALJ must specifically address in his decision.

The ALJ satisfied the requirements of SSR 06-03p in this matter.  Clearly, he did not ignore "other source" evidence.  Instead, he addressed the opinions provided by Plaintiff's teachers in the teacher questionnaires and discussed that evidence in sufficient detail to "allow[] a . . .  subsequent reviewer to follow [his] reasoning . . . ."  *Id.* at 6.  Plaintiff has failed to establish that the ALJ's evaluation of the opinions of J.M.E.'s "educational personnel" is legally deficient.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

---

the individual activities of "expressing ideas in written form" and of "reading and comprehending written material" are only two out of ten individual activities in the domain of acquiring and using information.  Third, Plaintiff cites to the opinions of three teachers in support of her argument, one of which was given by J.M.E.'s kindergarten teacher whose opinions the ALJ discounted because J.M.E. was not yet on medication at the time the opinion was provided [Tr. 16 - 17 and 61]).  Fourth, the three opinions cited by Plaintiff were not unanimous.  While two of the teachers felt the J.M.E. had "a serious problem" with the individual activity of "expressing ideas in written form,"[Tr. 86 and 94], one only believed that to be "a slight problem." [Tr. 61].  By the same token, only one of these three teachers found "reading and comprehending written material" to be "a serious problem." [Tr. 61].

Obviously, consistent and repeated findings by a teacher or teachers of serious or very serious problems in numerous individual activities within one domain could well be "significantly probative evidence," requiring specific discussion by the ALJ.  (Here, for example, the ALJ's careful review of the teacher questionnaires is evident in his decision; the ALJ specifically noted a teacher's opinion that J.M.E. had slight problems with numerous individual activities in two domains [Tr. 17, 95, and 96]).  If, under those circumstances, an ALJ had found less than marked limitations in the relevant domain, a "subsequent reviewer" would have needed an explanation from the ALJ in order to follow his reasoning. Plaintiff has failed, however, to point to such evidence in this case.

14

For the foregoing reasons, it is recommended that the final decision of the Commissioner be affirmed. The parties are advised of their right to object to this Report and Recommendation by October 20, 2008, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 30th day of September, 2008.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE

15